The document below is hereby signed.

Signed: December 02, 2008.



_____

S. Martin Teel, Jr.
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

In re                              )
                                   )
FRANK ROBERT COOK,                 )        Case No. 08-00317
                                   )        (Chapter 11)
                  Debtor.          )        **Not for Publication in**
                                   )        **West's Bankruptcy Reporter**

 MEMORANDUM DECISION AND ORDER ADDRESSING MOTION TO AMEND ORDER
AND AMENDING COURT'S ORAL FINDINGS OF FACT AND CONCLUSIONS OF LAW

     The debtor Frank Robert Cook has filed a Motion to Amend

Order (supplemented by a later memorandum of law, and by a reply

to Sovereign Bank's opposition) in which he seeks to amend the

court's order granting relief from the automatic stay to

Sovereign Bank and the court's anticipated order reflecting its

oral decision on the debtor's Motion Seeking Relief for

Violations of the Automatic Stay (the "sanctions motion").  This

Memorandum Decision addresses the Motion to Amend Order and also

amends the court's oral findings of fact and conclusions of law

rendered at the trial of the sanctions motion.

                                 I

     Cook has shown no basis for vacating the order granting

relief from the automatic stay of 11 U.S.C. § 362(a).  The

evidence plainly established both prongs of 11 U.S.C. §

362(d)(2), and, accordingly, relief from the stay was

appropriate.  Cook's contention that "the stay should not have

been lifted in the instance [sic] case because the debtor offered

Sovereign adequate protection payments and he offered to cure the

entire post-petition arrearages" is irrelevant.  Once it was

established that there was no equity in the pleasure boat and

that it was not necessary for an effective reorganization, relief

from the stay under § 362(d)(2) was appropriate.

II

As to the sanctions motion, Cook seeks to set aside the

ruling denying his request for punitive damages and the ruling

regarding actual damages he suffered.

A.

As to punitive damages, Cook contends that:

> even after Sovereign received actual notice of the
> bankruptcy petition directly from the Court on
> approximately May 29, 2008 – Sovereign continued to
> maintain possession of the yacht and it failed or
> refused to return the vessel to the debtor until
> September 10, 2008.  Sovereign offered no evidence as
> to why it waited so long before returning the yacht.

Sovereign did provide such evidence.  Through inadvertence,

Sovereign's office that received the notification of the

bankruptcy case neglected to inform Sovereign's repossession

office of the filing of the case.  Although it made a notation of

the filing in the company's electronic system, that notation was

2

made too late to be in the system when the repossession office
instructed NPA Associates, a repossession company, to seize the
vessel, and did not come to the attention of the repossession
office until later.  On June 6, 2008, NPA Associates seized the
vessel on behalf of Sovereign.  On June 10, 2008, Sovereign's
attorney in Massachusetts, Lawrence Mullen, having learned of the
filing, informed Cook's attorney, Andre Barber, that the vessel
would be returned to Cook.  Sovereign instructed NPA Associates
to return the vessel.  Sovereign was advised by NPA Associates
that the vessel was being returned.  But Harbor View Marina
refused to permit the vessel to be returned there.  NPA
Associates neglected to inform Sovereign of this snag.

Cook learned of Mullen's conversation with Barber and of
Mullen's statement that Sovereign would return the vessel, but
neither he nor Barber called Mullen or Sovereign to inquire once
the vessel was not promptly returned.

In addition, during the conversation of June 10, 2008,
Mullen asked Barber what Cook's intentions would be regarding the
treatment of the vessel in the bankruptcy case, and Barber said
he would get back to Mullen.  When Barber failed to call back,
Mullen attempted to call Barber on July 15, 2008, but Barber did
not answer the call, and Barber's voice mail was full.  Not
having heard from Barber, Mullen assumed that the vessel's return
was being dealt with in a manner satisfactory to Cook.  Instead

of contacting Mullen when the boat was not promptly returned,
Barber filed Cook's sanctions motion on July 15, 2008.

When to his shock, Mullen learned on July 21, 2008, of the
sanctions motion filed on July 15, 2008, Mullen made inquiries
and learned that NPA Associates had received the order to return
the vessel on June 9, 2008, but was unable to return the vessel
because Harbor View Marina, from which the vessel had been
seized, was refusing to take the boat back.   Mullen advised
Sovereign that it should try to get the issue resolved of where
to return the vessel to Cook, and Sovereign initiated steps to
ascertain from Cook where the vessel could be returned.

As Sovereign's representative Frank J. Liberti testified,
NPA Associates then awaited Cook's setting up a marina for the
return of the boat.[1]  Moreover, Sovereign's Exhibit S was
received into evidence without the debtor having articulated any
proper objection to that exhibit.  That exhibit, a letter of
September 15, 2008, from Sovereign's attorney to Cook's attorney,
recites:

---

[1]  Although that knowledge was based on what Liberti had
learned from the repossession agent, NPA Associates, the
testimony was elicited by the debtor.  In any event, the
testimony went to the state of mind of Sovereign's
representative, and, in turn, whether Sovereign was refusing to
return the vessel.  For purposes of punitive damages, the
testimony, even if it had been objected to as hearsay, was
admissible because it demonstrates that Sovereign plainly was
acting in good faith.

4

> I have yet to receive any response to my
> communication of September 3, 2008 requesting a mooring
> location where Sovereign Bank may return the yacht to
> Mr. Cook.  I have asked on several occasions that you
> provide me with the location to which the Yacht might
> be delivered.  To date, you have failed to respond to
> my repeated requests.  Consistent with our prior
> discussions on July 24 and August 19, and my letter
> September 3, 2008, Sovereign Bank has attempted to
> return the yacht to Mr. Cook's possession and remains
> ready and willing to do so.  However, because of the
> outstanding arrearage, the marina will not accept
> delivery of the yacht and Sovereign has no way of
> returning the yacht to Mr. Cook until you or your
> client provides information as to where the yacht
> should be delivered.

With that exhibit in evidence, the record established that as of

July 24, 2008, there had been an attempt by Sovereign to return

the yacht to Cook's possession, but Cook needed to designate a

marina to which the yacht should be returned.  Prior to September

15, 2008, Cook failed to designate a marina to which Sovereign

should return the vessel.  Once Cook designated a marina,

Sovereign encountered delays in the new marina arranging for

receipt of the vessel, and finally on October 10, 2008, the

vessel was delivered to the new marina.

Cook makes much of the fact that he now has evidence that

NPA Associates had paid Cook's unpaid Harbor View Marina charges

when it repossessed the vessel, and argues that Sovereign is in

error in contending that because of an outstanding arrearage,

Harbor View Marina was refusing to accept delivery of the vessel.

But Cook does not contest the fact that there had been an

outstanding arrearage at the time of the seizure that he had

failed to pay.  Even though Cook now has evidence that NPA

Associates paid the arrearage when it seized the vessel, Harbor

View Marina was refusing to allow the vessel to be returned to

Harbor View Marina, and presumably was doing so because of the

arrearage that had been outstanding at the time of the seizure.

If Harbor View Marina was *not* refusing to accept the return of

the vessel, then Cook could have simply directed that the vessel

be returned to that marina.  Cook offered no explanation for why,

if Harbor View Marina *was* willing to accept return of the vessel,

he directed that the vessel be returned to another marina.

Moreover, Sovereign had no reason to refuse to return the

vessel to Cook.  As Liberti testified, Sovereign incurred more

than $9,000 in storage fees as a result of having seized the

vessel.  That was a disincentive to hold onto the vessel, and

Cook has not suggested any plausible reason why Sovereign would

have had an incentive to hold onto the vessel.

The evidence that NPA Associates paid the unpaid marina

charges at the time of repossession only clarifies that the

unpaid arrearages had been paid, but does not alter the fact that

Harbor View Marina was refusing to allow Cook to have the vessel

stored there.  Any error in the court's thinking that the

outstanding arrearage had not been paid and was still outstanding

after the seizure was an error without consequence.  Accordingly,

there is no reason to set aside my prior ruling that punitive

damages are inappropriate.

B.

As to the award of actual damages, Cook requests that the
Court amend its findings to include all amounts that accrued
under the note during the time in which Sovereign had possession
of the yacht.  But Cook has not demonstrated that the required
payments on the note are equal to the rental value of the yacht.
Without such evidence, there is no way of measuring what Cook
lost by reason of being deprived of use of his yacht.  Moreover,
he was relieved of storage costs during the period of the
seizure.  Cook had the burden of establishing his damages, and
failed to present evidence that would allow this court to fix an
appropriate amount of compensation for the period he was deprived
of possession of the vessel.  Only nominal damages of $1.00 are
thus appropriate for the loss of use of the boat.

III

In my oral decision, I awarded Cook partial compensation for
some of the maintenance expenses he incurred after the return of
the vessel.  After I issued my oral decision, I immediately had
second thoughts about that award, and intended to set it aside.
As discussed in part II(A) above, Cook was responsible for part
of the delay in the return of the vessel, including the period of
a few days at the end of July, all of August and half of
September.  He has not demonstrated that any part of the

7

maintenance expenses can fairly be allocated to the time that

Sovereign was not awaiting a response from Cook as to where to

return the vessel.  Had Cook promptly designated a marina for the

return of the vessel, the barnacle growth the vessel suffered

(due to sitting idle) likely would not have occurred.

In any event, even if Sovereign were charged with

maintenance expenses arising from the entire period of the

seizure, the evidence was simply too thin to permit the court

rationally to make an allocation of the maintenance expenses

against Sovereign.  The charges related to zinc replacement

(something Cook failed to show was necessitated by Sovereign's

seizure of the vessel) and barnacle removal (which was perhaps

caused by the vessel remaining unused for much of the period of

the seizure).  But those two categories of charges were not

broken down by Cook into separate charges: they were presented as

a lump sum.  Any decision regarding those two charges would have

to be on the basis of speculation.  My assumption at the trial

that the two charges (barnacle removal and zinc replacement)

would be roughly equal, was purely speculative and cannot support

a rational ruling in Cook's behalf.  Cook requested a prompt

trial and must suffer the consequences if he was unprepared to

put on competent evidence as to the damages he suffered.

Accordingly, an order follows that will limit Cook's actual

damages to his reasonable attorney's fees, a nominal award of

$1.00 for the loss of use of the vessel, and the $486.25 in

missing gasoline.  The parties should confer about the attorney

fees.  Much of the trial, and of the instant motion, were

unsuccessful attempts to recover punitive damages and certain

actual damages that were not allowed.  Accordingly, the

reasonable fees ought not include all of the time spent in this

matter.

IV

Pursuant to the foregoing, it is

ORDERED that the court's oral findings of fact and

conclusions of law regarding Cook's Motion Seeking Relief for

Violations of the Automatic Stay (Docket Entry No. 57) are

amended to be consistent with the foregoing.  It is further

ORDERED that Frank Robert Cook's Motion to Amend Order

(Docket Entry No. 139) is DENIED except that the court's oral

decision regarding Cook's Motion Seeking Relief for Violations of

the Automatic Stay is amended to award $1.00 in nominal damages

for the loss of use of the yacht.

[Signed and dated above.]

Copies to: Debtor; Debtor's attorney; Office of United States
Trustee; Tara L. Elgie, Esq.